1   GEORGE G. WEICKHARDT (SBN 58586)
    ANDREW J. CHO (SBN 240957)
2   ROPERS, MAJESKI, KOHN & BENTLEY
    201 Spear Street, Suite 1000
3   San Francisco, CA 94105-1667
    Telephone: (415) 543-4800
4   Facsimile: (415) 972-6301
    Email:     gweickhardt@rmkb.com
5              acho@rmkb.com

6   Attorneys for Defendant
    CHASE BANK, USA, N.A.

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  KENNETH A. MARCHAND,              CASE NO. 2:10-cv-09805 DDP (JCx)

12              Plaintiff,            **CHASE BANK USA N.A.'S
                                      OPPOSITION TO PLAINTIFF'S
13       v.                           MOTION TO DISMISS
                                      COUNTERCLAIM**
14  CHASE BANK USA, N.A.,
                                      Date:  February 14, 2011
15              Defendant.            Time:  10:00 a.m.
                                      Judge: Honorable Dean D. Pregerson
16

17

18

19

20

21

22

23

24

25

26

27

28

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................1

II.   ARGUMENT.......................................................................2

    A.    Chase's Counterclaim Involves The Same Transaction Or Occurrence As The Third And Fourth Causes Of Action In The FAC ...................................................................................2

    B.    The Counterclaims Are Also Compulsory To Plaintiff's Claims For Alleged Violation Of The RFDCPA And Invasion Of Privacy....................................................................................5

    C.    Even If They Are Not Compulsory, The Counterclaims Are Part Of The Same Case Or Controversy As The RFDCPA And Invasion Of Privacy Claims ............................................6

        1.    The Cases Cited In Section IV, A Of Plaintiff's Motion Are Inapplicable....................................................7

        2.    The Court Should Not Decline Jurisdiction Pursuant To § 1367(c)(4) As All Circuit Courts And Most District Courts Have Rejected The "Chilling Effect" Argument Set Forth in Sparrow ....................................................8

        3.    The Interests Of Fairness, Efficiency, And Economy Support The Exercise Of Supplemental Jurisdiction...............12

        4.    The Counterclaims will not "predominate" or have a chilling effect .................................................................15

    D.    The Chilling Effect Analysis Has Never Been Applied To State Common-Law Claims ........................................................16

III.  CONCLUSION ...................................................................16

**TABLE OF AUTHORITIES**

Page(s)

CASES

*Albright v. Gates,*
  362 F.2d 928 (9th Cir. 1966) .................................................................. 4

*Avery v. First Resolution Mgmt. Corp.,*
  2007 U.S. Dist. LEXIS 39260 (D. Or. 2007) ...................................... 8

*Baer v. First Options,*
  72 F.3d 1294, 1299 (7th Cir. 1995) ...................................................... 7

*Baker v. Gold Seal Liquors,*
  417 U.S. 467, 468, n.1 (1974) ............................................................... 4

*Bakewell v. Federal Financial Group, Inc.,*
  2006 U.S. Dist. Lexis 23073 (N.D. Ga. 2006) .................................. 14

*Brown v. Morris,*
  243 Fed. Appx. 31, 36 (5th Cir. 2007) .................................................. 9

*Campos v. Western Dental Services, Inc.,*
  404 F. Supp. 2d 1164, 1169 (N.D. Cal. 2005) ............................... 9, 13

*Channell v. Citicorp Nat'l Services, Inc.,*
  89 F.3d 379 (7th Cir. 1996) ...................................... 9, 10, 14, 15

*Ghazal v. RJM Acquisitions Funding, LLC,*
  2008 U.S. Dist. Lexis 51295 (S.D. Fla. 2008), denied ...................... 12, 13

*Global Naps, Inc. v. Verizon New England Inc.,*
  603 F.3d 71, 87, FN22 (1st Cir. 2010) .................................................. 7

*Haney v. Law Offices of Rory Clark,*
  Action No. SACV-10-0663 ...................................................................... 5

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.,*
  140 F.3d 442, 448 (2d Cir. 1998) ........................................................ 12

*Jones v. Ford Motor Credit Co.,*
  358 F.3d 205, 213 (2d Cir. 2004) .......................................... 7, 11, 12, 15

*Koumarian v. Chase Bank USA, N.A.,*
  2008 WL 5120053, 2008 U.S. District LEXIS 101910 (N.D. Cal. 2008) .......... 15

**Page**

*Marlin v. Chase Cardmember Services,*
  2009 U.S. Dist. LEXIS 45189 (E.D. Cal. 2009) ................................................. 8

*Padilla v. Clovis & Roche, Inc.,*
  2007 U.S. Dist. Lexis 88293 (N.D.N.Y. 2007) ................................................. 12

*Plant v. Blazer Financial Services, Inc. of Georgia,*
  598 F.2d 1357 (5th Cir. 1979), *reh'g den.*, 605 F.2d 555 (5th Cir. 1979) ........... 10, 11, 14, 15

*Pochiro v. Prudential Ins. Co. of Am.,*
  827 F.2d 1246, 1249 (9th Cir. 1987) ................................................. 4

*Randall v. Nelson & Kennard,*
  2009 U.S. Dist. LEXIS 81896 (D. Ariz. 2009) ................................................. 8

*Richmond v. Malad,*
  2001 U.S. Dist. Lexis 10505 (S.D. Ind. 2001) ................................................. 11

*Sparrow v. Mazda Am. Credit,*
  385 F. Supp.2d 1063 (E.D. Cal. 2005) ................................................. passim

*Thomas v. Commercial Recovery Systems, Inc.,*
  2008 U.S. Dist. Lexis 30991 (M.D. Fla. 2008) ................................................. 13

*Transamerica Occidental Life Ins. Co. v. Aviation Office of Am., Inc.,*
  292 F.3d 384 (3d Cir 2002) ................................................. 4

*United Mine Workers v. Gibbs,*
  383 U.S. 715 (1966) ................................................. 7, 12

*Woodrow v. Satake Family Trust,*
  2006 U.S. Dist. Lexis 97917 (N.D. Cal. 2006) ................................................. 13, 14

**STATUTES**

15 U.S.C. 1681 et seq. ................................................. 5

15 U.S.C. § 1692e(10) ................................................. 6

28 U.S.C. § 1367 ................................................. 6

California Civil Code § 1788.17 ................................................. 6

Consumer Credit Act (15 U.S.C. § 1600 et seq.) ................................................. 15

Consumer Leasing Act, 15 U.S.C. §§ 1667 et seq. ................................................. 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Page**

**OTHER AUTHORITIES**

Fed. R. Civ. P. 13(a)(1)(A) ........................................................................... 4

FRCP 12(b) ................................................................................................... 2

# I. **INTRODUCTION**

Chase's Counterclaim is a compulsory counterclaim to Plaintiff's Complaint. Both the counterclaims and Plaintiff's third and fourth causes of action (breach of contract and breach of good faith and fair dealing) arise from the same transaction or occurrence, namely, Plaintiff's unpaid credit card balances with Chase and whether or not they are due and owing, or instead eliminated. Plaintiff's Motion seems to assume, incorrectly, that the only claims alleged are under California's Rosenthal Fair Debt Collection Practices Act, and argues that the counterclaims are not compulsory as to that particular claim. Plaintiff's Motion to Dismiss ignores the fact that Plaintiff put his unpaid credit card balances at issue in his First Amended Complaint ("FAC") by alleging "Plaintiff and Defendants entered into nine separate oral contracts that settled his Debt…." FAC at 60. It is further alleged that Chase breached these contracts by allegedly not accepting the reduced amount agreed upon to settle the debt. Chase's counterclaim alleges that Plaintiff still owes $5231.03 on three of these allegedly "settled" accounts. Thus whether there is any amount owing on these three accounts is a common issue between the FAC and the counterclaims, and the counterclaims therefore arise from the same transaction or occurrence as the breach of contract claim in the Complaint.

In sum, Chase's Counterclaim alleges that Plaintiff owes Chase $5,321.03 on three specified credit card accounts, and Plaintiff contends that he owes nothing on the three accounts because there was a valid agreement to accept a lesser amount in settlement (an allegation that Chase denies). Whether there is anything due on these three accounts is an issue common to the complaint and counterclaims, and a separate and independent basis for supplemental jurisdiction over the counterclaims that does not in any way involve Plaintiff's Rosenthal Fair Debt Collection Practices Act (RFDCPA) claims.

The counterclaims, moreover, are compulsory with respect to certain of the allegations in the RFDCPA claim and the invasion of privacy claim, and there is

- 1 -

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1  supplemental jurisdiction over all of the RFDCPA allegations because they involve

2  the same case or controversy as the Complaint.

3      Accordingly, the Court should deny Plaintiff's FRCP 12(b) Motion to

4  Dismiss.  If the Court is inclined to grant any part of Plaintiff's Motion, Chase

5  requests that it be granted leave to amend its Counterclaim to make it clear that its

6  counterclaims involve the same transaction or occurrence as the Third and Fourth

7  Causes of Action.

8                           **II.  ARGUMENT**

9  **A.**  **Chase's Counterclaim Involves The Same Transaction Or Occurrence**
10     **As The Third And Fourth Causes Of Action In The FAC**

11      Plaintiff's Motion states in conclusory terms: "… Plaintiff's claim and

12  Defendant's counterclaim do not arise out [sic] the same transaction or occurrence.

13  Thus, Defendant's counterclaim is not compulsory."  Motion at 4:16-17.  This,

14  however, is not a situation, as Plaintiff seems to contend, where the complaint is

15  solely about collection calls, while the counterclaims are solely about the breaches

16  of contract which occurred when Plaintiff failed to pay the amount due on his credit

17  card accounts.  The Third and Fourth Causes of Action of the FAC and the

18  counterclaims arise out of the same transaction or occurrence, and both concern

19  whether Plaintiff is indebted to Chase and if so, in what amount.

20      Plaintiff's Motion completely ignores his Third and Fourth Causes of Action,

21  for alleged breach of contract and alleged breach of covenant of good faith and fair

22  dealing.  These causes of action allege:

23          Plaintiff and Defendants [sic] entered into nine separate
            oral contracts that settled his Debt.  The terms of these
24          contacts are set forth in paragraph 18 through 26 of this
            Complaint.  The essential terms were that Plaintiff was to
25          make monthly payments on each account and after
            Plaintiff made said payments Defendants would consider
26          the account fully settled and would cease collection.  The
            payment terms of these contracts were memorialized in
27          Exhibits A through I of this Complaint.

28  Complaint at 60.  In its answer Chase denied these allegations.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

Plaintiff attached to his Complaint letters from Chase as exhibits A through I. These letters relate to scheduled payments on each of the nine accounts alleged in the Third and Fourth Causes of Action. Further, Exhibit I is a letter that begins: "We are pleased to confirm your acceptance of our settlement agreement in the amount of $2,625.00…." Paragraph 61 alleged that Plaintiff fully performed these nine separate oral contracts by making all of the payments listed in Exhibits A through I. Chase denied this allegation as well.

Chase's counterclaim alleges that Plaintiff did not make the payments required as to three of the accounts at issue: Nos. 3410 (to which Exhibit F of the Complaint refers), 1776 (to which Exhibit B to her FAC refers), and 7805 (to which Exhibit D of the FAC refers). The counterclaim alleges that Plaintiff owes $1,277.97 on the 3410 account, $1,404.05 on the 1776 account and $2,639.01 on the 7805 account.

In order to prevail on his breach of contract and breach of covenant of good faith and fair dealing claims, Plaintiff must prove that he does not owe the $5,321.03 that is the subject of Chase's Counterclaim, while Chase must prove that he does owe that amount. Plaintiff's unpaid credit card debt is therefore the subject of both Plaintiff's breach of contract and covenant of good faith and fair dealing claims and Chase's counterclaim. Chase, of course, contends Plaintiff owes Chase the entire $5,321.03 in unpaid credit card debt.

In order for Chase to prevail on its counterclaim and at the same time defeat Plaintiff's breach of contract and breach of covenant of good faith and fair dealing claims, Chase will present the identical evidence: Plaintiff's billing statements, records of payments made, documents regarding the alleged "settlements" and other documents and testimony relating to Plaintiff's unpaid credit card debts.

The balance due and owing on the three credit card accounts alleged in the Counterclaim is thus a common issue to the Complaint and counterclaim. If Chase prevails in establishing that Plaintiff owes $5,321.03 in credit card debt, it will

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1  prevail on its counterclaim and defeat Plaintiff's breach of contract and breach of

2  covenant of good faith and fair dealing claims as to the same three accounts.  Thus,

3  the counterclaims and the third and fourth causes of action arise out of exactly the

4  same transaction(s) or occurrence, i.e., the debt incurred, due and owing on

5  Plaintiff's three credit card accounts at issue.  Indeed under Fed. R. Civ.

6  P. 13(a)(1)(A), Chase's counterclaims are compulsory counterclaims as to the third

7  and fourth cause of action because they arise out of the "transaction or occurrence

8  that is the subject matter of the opposing party's claim."  The Court of course has

9  supplemental subject matter jurisdiction over compulsory counterclaims, and no

10  independent basis of jurisdiction is required.  *Albright v. Gates*, 362 F.2d 928 (9th

11  Cir. 1966).  The traditional rule is the federal courts have supplemental jurisdiction

12  over compulsory counterclaims, since the counterclaimant would otherwise lose his

13  opportunity to be heard on that claim.  *Baker v. Gold Seal Liquo*rs, 417 U.S. 467,

14  468, n.1 (1974).

15      In the Ninth Circuit a counterclaim is said to involve the same "transaction or

16  occurrence" when "the essential facts of the various claims are so logically

17  connected that considerations of judicial economy and fairness dictate that all the

18  issues be resolved in one lawsuit."  *Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d

19  1246, 1249 (9th Cir. 1987).  A logical relation is said to exist where "separate trials

20  on each of the claims would involve a substantial duplication of effort and time by

21  the parties and courts . . . when claims involve the same factual and legal issues, or

22  are offshoots of the same basic controversy between the parties."  *Transamerica*

23  *Occidental Life Ins. Co. v. Aviation Office of Am., Inc.*, 292 F.3d 384-389-390 (3d

24  Cir 2002).  The foregoing tests plainly apply here:  because the amount of the debt,

25  if any, must be determined to adjudicate both the counterclaims and the breach of

26  contract and breach of covenant of good faith and fair dealing claims.  Separate

27  trials would involve substantial duplication of effort and the possibility of

28  inconsistent results.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1    Precisely the same issue was faced by the Honorable Andrew J. Guilford

2  recently in *Haney v. Law Offices of Rory Clark*, Action No. SACV-10-0663 AG

3  (Docket no. 63, copy attached hereto as Exhibit A).  There the plaintiff filed a

4  complaint alleging FDCPA and Fair Credit Reporting Act ("FCRA", 15 U.S.C.

5  1681 et seq.) violations.  There was a counterclaim for collection of the underlying

6  debt. The plaintiff moved to dismiss the counterclaim on grounds similar to those

7  asserted here.  The court noted that the FCRA claim alleged that the debt was not

8  owed, and had therefore been reported incorrectly to credit reporting agencies.

9  Despite the presence of an FDCPA claim, the Court ruled that the counterclaim for

10 the debt was compulsory as to the FCRA claim because plaintiff would have to

11 prove that he did not owe the debt to succeed in his FCRA claim, while

12 counterclaimant would have to prove that he did owe the debt to succeed on its

13 counterclaim.

14    Plaintiff cannot now deny that his credit card debt is squarely at issue in his

15 FAC.  This same credit card debt is the subject of Chase's counterclaim.  The Court

16 should retain supplemental jurisdiction of Chase's counterclaim because it involves

17 the same transaction and occurrence as Plaintiffs' Complaint.

18 **B.    The Counterclaims Are Also Compulsory To Plaintiff's Claims For
         Alleged Violation Of The RFDCPA And Invasion Of Privacy**

19    Plaintiff's claims for alleged violation of the RFDCPA and invasion of

20 privacy concern Chase's alleged phone calls to the Plaintiff to collect his unpaid

21 credit card debts.  It is undeniable, however, that certain of the allegations in the

22 RFDCPA claim also relate to the same issues alleged in the Third and Fourth

23 Causes of Action.  For example, paragraph 8 of the FAC states:

24
25          Plaintiff obtained various credit cards from CHASE (the
            "Debt") and then experienced financial difficulties.

26 Paragraph 13 of the FAC states:

27
28          In or around February 2010 Plaintiff informed a
            representative at CHASE that he had signed up with a

RC1/5849478.1/AC1                          - 5 -                    CHASE BANK USA, N.A'S OPPOSITION TO
                                                               PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM

debt settlement company because of financial difficulties.
Paragraph 30 of the FAC states:

> CHASE representatives falsely stated that Plaintiff had
> called CHASE and asked that the accounts be removed
> form the settlement agreement even though Plaintiff had
> been paying as agreed.

In other words, paragraph 30 alleges that Chase took the position that Plaintiff himself had removed some or all of the accounts from the settlement agreement alleged in the Third And Fourth Causes of Action.  It is indeed Chase's contention that Plaintiff did remove the accounts pleaded in the counterclaims from the alleged "settlement agreements."  Paragraph 30 alleges that that is false and that Chase's representation that certain of the settlements were canceled violated the RFDCPA. Thus there is at least one common issue of fact between the RFDCPA claim and the counterclaims.  The same allegations are incorporated into the invasion of privacy claim.

In sum, one of the RFDCPA claims alleged is that Chase "violated California Civil Code § 1788.17 by failing to comply with 15 U.S.C. § 1692e(10) by using a false representation or deceptive means to collect or attempt to collect any debt or to obtain information regarding a consumer." FAC at 43(n).  Thus, in this case in particular, whether certain accounts were removed from the settlement agreements and the amount of the debt on those accounts is part and parcel of the claims for violation of the RFDCPA, and the counterclaims are compulsory to these claims.

**C.   Even If They Are Not Compulsory, The Counterclaims Are Part Of The Same Case Or Controversy As The RFDCPA And Invasion Of Privacy Claims**

Even if the counterclaims are not compulsory as to the RFDCPA and invasion of privacy claims, the Court should nonetheless exercise supplemental jurisdiction over them.  28 U.S.C. § 1367 states that in any civil action of which the district courts have original jurisdiction, as is the case here, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1   the action within such original jurisdiction that they form part of the same "case or

2   controversy." Plaintiff's RFDCPA and invasion of privacy claims and Chase's

3   counterclaim are part of the same "case and controversy" because they arise from

4   "a common nucleus of operative facts" and they would ordinarily be expected to be

5   tried in a single judicial proceeding. *United Mine Workers v. Gibbs*, 383 U.S. 715

6   (1966).

7     To form the same case or controversy, only "[a] loose factual connection

8   between the claims is generally sufficient." *Baer v. First Options*, 72 F.3d 1294,

9   1299 (7th Cir. 1995). As another court put it, the counterclaim need only arise out

10  of the same "common nucleus of operative facts as the complaint." *Jones v. Ford*

11  *Motor Credit Co.*, 358 F.3d 205, 213 (2d Cir. 2004). <u>This is a broader test</u> than

12  "same transaction or occurrence" standard that Plaintiffs have erroneously quoted

13  in their Motion. *Global Naps, Inc. v. Verizon New England Inc.*, 603 F.3d 71, 87,

14  FN22 (1st Cir. 2010). See Motion at 4:15-17.

15    Here, at the very least a loose factual connection exists between the

16  RFDCPA and invasion of privacy claims and the counterclaims, because they all

17  concern the same credit card debt, and therefore they form the same case and

18  controversy.

19    **1.**  **The Cases Cited In Section IV, A Of Plaintiff's Motion Are**

20      **Inapplicable**

21    Plaintiff's Motion states: "The Court Should Decline to Exercise

22  Supplemental Jurisdiction Because of the Strong Public Policy Behind Unlawful

23  [sic] Debt Collection Statutes." Plaintiff's Motion cites several cases in support of

24  the assertion. These cases hold that as to <u>federal</u> FDCPA claims, there are public

25  policy reasons ("the chilling effect") for a court to exercise its discretion not to

26  assume supplemental jurisdiction. Motion at 5-6.

27    Plaintiff's Motion cites *Sparrow v. Mazda Am. Credit*, 385 F. Supp.2d 1063

28  (E.D. Cal. 2005) and states "the *Sparrow* Court found that the strong public policy

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1  underlying the FDCPA 'satisfies the exceptional circumstances requirement to

2  support an order declining to exercise supplemental jurisdiction." Motion at 5.

3  Surveying the authorities from the various circuits, the *Sparrow* court did conclude

4  that the "analysis no longer ends with the compulsive/permissive distinction." One

5  must still determine whether there is supplementary jurisdiction under § 1367(a) on

6  the ground that the complaint and counterclaim arise out of the same case or

7  controversy. *Sparrow* concluded that counterclaims to collect the debt do bear "a

8  logical and factual relationship" to a plaintiff's FDCPA claims "because they are

9  related to a single debt incurred by the plaintiff, supplemental jurisdiction exist over

10  Defendants counterclaims under §1367(a)." *Id.* at 1070.

11       *Sparrow*, however, went on to conclude that even though the court had

12  supplemental jurisdiction over the counterclaims, it would decline to exercise under

13  § 1367(c), because such counterclaims would have a "chilling effect" on the

14  FDCPA suits.

15       Plaintiff cites no authority, and there is none, that California has adopted a

16  similar "chilling effect" doctrine with respect to the state FDCPA.

17       Assuming, however, for the sake of argument that *Sparrow* was intended to

18  apply to the state FDCPA, this Court should reject the *Sparrow* analysis because it

19  has been rejected by all circuits that have considered the issue.

20       **2.   The Court Should Not Decline Jurisdiction Pursuant To
            § 1367(c)(4) As All Circuit Courts And Most District Courts Have**

21       **Rejected The "Chilling Effect" Argument Set Forth in *Sparrow***

22       The remaining cases cited by Plaintiff cite to *Sparrow* and adopt its

23  reasoning.[1] <u>The real issue then is not whether there is supplemental jurisdiction</u>

24  ─────────────────
[1] *Marlin v. Chase Cardmember Services*, 2009 U.S. Dist. LEXIS 45189 (E.D. Cal.

25  2009) ("Defendant contends, and the Court agrees, that supplemental jurisdiction
   exists over the permissive counterclaim pursuant to section 1367(a) because there is
   at least a 'loose factual connection' between the two claims"); *Randall v. Nelson &*

26  *Kennard*, 2009 U.S. Dist. LEXIS 81896 (D. Ariz. 2009) ("The Court has
   supplemental jurisdiction over LVNV Funding's Counterclaim"); *Avery v. First*

27  *Resolution Mgmt. Corp.*, 2007 U.S. Dist. LEXIS 39260 (D. Or. 2007) ("Both the
   Counterclaim and plaintiff's underlying FDCPA claims relate to a single debt

28  incurred by plaintiff.  Accordingly, the Counterclaim satisfies the 'same case or

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1    (which there is) but whether this Court should decline to exercise it on the basis of

2    the "chilling effect" doctrine.  In fact, all of the Circuits that have addressed the

3    issue had rejected the "chilling effect" doctrine.

4         Plaintiffs' Motion argues that the Court should decline to exercise

5    supplemental jurisdiction for policy reasons because "of the strong public policy

6    behind unlawful debt collection statutes."  Motion at 5:1-2.  Rejecting the "chilling

7    effect" analysis, three circuit courts have found compelling policy reasons to retain

8    supplemental jurisdiction in analogous situations.

9         *Brown v. Morris*, 243 Fed. Appx. 31, 36 (5th Cir. 2007) involved a complaint

10   alleging FDCPA violations and a counterclaim for the underlying debt.  The court

11   held that it had supplemental jurisdiction over the counterclaim because it involved

12   many of the same facts as the complaint, including the debtor's obligations under

13   the note and her failure to make payments.

14        Likewise, in *Channell v. Citicorp Nat'l Services, Inc.*, 89 F.3d 379 (7th Cir.

15   1996), a consumer's complaint alleged a claim under the Consumer Leasing Act, 15

16   U.S.C. §§ 1667 et seq., asserting that the method of calculating interest on leases

17   was improper.  A counterclaim was brought to collect amounts due on the leases.

18   The Court of Appeals vacated the trial judge's order dismissing the counterclaim.

19   Plaintiffs argued that entertaining a counterclaim on the lease would discourage the

20   enforcement of the Consumer Leasing Act (i.e., have a "chilling effect").  The court

21   rejected that argument, stating:

22            In making this argument, counsel appears to assume that
             the two options are:  (a) lessees recover under the Act and
23            never pay their debts under the lease; and (b) lessees
             recover under the Act and are ordered in the counterclaim
24

25   controversy' test and supplemental jurisdiction could be exercised under
     Section 1367(a)"); *Campos v. Western Dental Services, Inc.*, 404 F. Supp. 2d 1164,
26   1169 (N.D. Cal. 2005) ("The court agrees that defendant Western's counterclaim is
     'so related' to plaintiff's claim as to form part of the same case or controversy,
27   since defendant Western's counterclaim and plaintiff's claim are related to the
     single debt incurred by plaintiff.  Thus, supplemental jurisdiction under
28   Section 1367(a) exists over defendant Western's counterclaim for the underlying
     debt").

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

CHASE BANK USA, N.A'S OPPOSITION TO
PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM

to pay their debts.  Option (a) certainly does more to encourage suits that enforce the Act but the inducement comes entirely from avoidance of the debts under the leases, which is not the inducement Congress established in the Act.  <u>Plaintiff cannot expect a court to tolerate evasion of lawful debts, or to use the fact that case-by-case enforcement is expensive to lessors (perhaps too expensive to justify independent legal action) to bestow on lessees a legal right to avoid collection</u>.  Option (a) is out of bounds.

*Id*. at 386 [emphasis added].  The court went on to consider other options, concluding that Option (b) was as good as any other, but leaving it to the trial court to choose between them.  Significantly, the court considered <u>both</u> encouragement to enforce the Act and the extent to which each option would impede or complicate the payment of lawful debts.

The *Channell* court went on to observe in considering whether the counterclaim would predominate that, "It may turn out that entry of judgment on the counterclaim requires little more than a mechanical calculation; if so, section 1367(c) would not justify relinquishing jurisdiction." *Id*. at 387.  That observation is particularly apt in the present case because here, Plaintiff has already admitted throughout his FAC that his credit card debts are at issue.  Plaintiff even attached letters regarding his debts to the FAC.  TAC at 19.  Thus, adjudication of the counterclaim would not predominate over the complaint, but would involve little more than placing before the Court the documentary evidence of the debts that Plaintiff owes.  Just as in *Channell*, the Court here should not tolerate the evasion of a lawful debt.

Ultimately, the *Channell* court found that there was supplemental jurisdiction and remanded the matter to the trial court to give the trial judge an opportunity to exercise the discretion that section 1367(c) confers.

Likewise, in *Plant v. Blazer Financial Services, Inc. of Georgia*, 598 F.2d 1357 (5th Cir. 1979), *reh'g den.*, 605 F.2d 555 (5th Cir. 1979) the court analyzed the various <u>policy reasons</u> for hearing the complaint (under the Truth in Lending

1   Act) and counterclaim (for the alleged debt) in the same action:  The court stated as

2   follows:

> [T]he resolution of the state law issues imposes little
> burden in fact because a judge determining the Truth in
> Lending claim must be well-versed in state consumer
> credit transaction law and the only additional finding to
> be made in connection with a counterclaim is how much
> the plaintiff has paid.  [Citation]
>
> We add to these arguments the observation that one of the
> purposes of the compulsory counterclaim rule is to
> provide complete relief to the defendant who has been
> brought involuntarily into the federal court.  [Citation]
> Absent the opportunity to bring a counterclaim, this party
> could be forced to satisfy the debtor's Truth in Lending
> claim without any assurance that his claims against the
> defaulting debtor arising from the same transaction will
> be taken into account or even that the funds he has been
> required to pay will still be available should he obtain a
> state court judgment in excess of the judgment on the
> Truth in Lending claim. . . .
>
> To permit the debtor to recover from the creditor without
> taking the original loan into account would be a serious
> departure from the evenhanded treatment afforded both
> parties under the Act.  Truth in Lending claims can be
> brought in either state or federal court.  To the extent this
> dual jurisdiction was intended to permit litigation of Truth
> in Lending claims and actions on the debt, it reflects a
> purpose that the debt claim and the Truth in Lending
> claims be handled together.  To the extent it was intended
> to relieve federal courts of any of this litigation, the
> purpose would be frustrated by providing a sanctuary
> from the creditor's claims in one jurisdiction but not the
> other.  State courts would always have jurisdiction of a
> creditor's counterclaim.  Had Congress intended to
> insulate recovery in Truth in Lending actions in federal
> court from the counterclaims of the creditors, of which it
> surely was aware, it could have easily done so.

22   *Id.* at 1364; *see also Richmond v. Malad*, 2001 U.S. Dist. Lexis 10505 (S.D. Ind.

23   2001) (holding that the purpose of a compulsory counterclaim rule is to "promote

24   judicial economy" and therefore choosing to exercise supplemental jurisdiction).

25         In *Jones v. Ford Motor Credit Company*, 358 F.3d 205 (2d Cir. 2004), an

26   Equal Credit Opportunity Act (ECOA) case involving a counterclaim for the debt

27   owed on a vehicle, the court noted that "where at least one of the

28   subsection 1367(c) factors is applicable, a district court should not decline to

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1   exercise supplemental jurisdiction unless it also determines that doing so would not

2   promote the values [of] economy, convenience, fairness, and comity." *Id.* at 215.

3        District courts in other circuits have also rejected the chilling effect doctrine.

4   *Padilla v. Clovis & Roche, Inc.*, 2007 U.S. Dist. Lexis 88293 (N.D.N.Y. 2007)

5   concerned an employment contract and repayment of fees advanced to plaintiff.

6   Plaintiff asserted claims under the FDCPA and New York state law and defendants

7   counterclaimed for breach of contract and unjust enrichment based on an

8   employment contract.  The court refused to dismiss defendants' counterclaims,

9   specifically addressing the chilling effect by stating that, "Plaintiffs have

10  demonstrated their fortitude in the adversary process" by virtue of their decision to

11  bring their state law claims." *Id.* at *16-17.  The *Padilla* court also relied on *Itar-*

12  *Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir.

13  1998) which noted that "declining jurisdiction outside the ambit of 1367(c)(1)-(3)

14  appears as the exception rather than the rule.  Thus, federal courts must ensure that

15  the reasons identified as "compelling" are not deployed in circumstances that

16  threaten this principle." *Itar-Tass* at 448 (citations omitted).

### 3.    The Interests Of Fairness, Efficiency, And Economy Support The Exercise Of Supplemental Jurisdiction

19       The Court must also consider that the interests of fairness, efficiency and

20  economy in litigating closely-related claims weigh heavily in favor of exercising

21  supplemental jurisdiction.  In *United Mine Workers v. Gibbs*, 383 U.S. 715, 725

22  (1966), values of "economy, convenience, fairness and comity" weighed in favor of

23  keeping both the complaint and counterclaim together in one action.  The same is

24  true here because to force Chase to bring the collection action in a different forum

25  would undermine the strong public policy in favor of people paying their lawful

26  debts, and at the same time ignore the interests of economy and efficiency in

27  resolving disputes.

28       The court in *Ghazal v. RJM Acquisitions Funding, LLC*, 2008 U.S. Dist.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

Lexis 51295 (S.D. Fla. 2008), denied the FDCPA plaintiff's motion to dismiss the counterclaims. The facts in *Ghazal* are similar to those in the instant matter. There was a disputed debt on a credit card for which plaintiff filed an FDCPA claim and defendant counterclaimed for, in part, the amount of the debt. The court noted that it could decline supplemental jurisdiction under § 1367(c)(4) only for compelling reasons such as public policy. In denying plaintiff's motion to dismiss the counterclaim, the court stated:

> [T]here are inherently important reasons both economically and socially to hear Defendant's counterclaim.... [I]t is economically prudent and time efficient to hear two causes of action in one suit, rather than a refilling of this cause of action in a separate complaint.

*Id.* at *9.

*Thomas v. Commercial Recovery Systems, Inc.*, 2008 U.S. Dist. Lexis 30991 (M.D. Fla. 2008) involved a debt owed by plaintiff for an installment contract for the purchase of a truck. Plaintiff sued JPMorgan Chase ("JPMC") for violation of the FDCPA and JPMC counterclaimed for the underlying debt. The court held that none of the conditions for declining supplemental jurisdiction provided a valid basis for declining JPMC's counterclaim, noting instead that "considerations of fairness and judicial economy require adjudication of the counterclaim." *Id.* at *4.

*Woodrow v. Satake Family Trust*, 2006 U.S. Dist. Lexis 97917 (N.D. Cal. 2006) involved a housing discrimination action where defendant's counterclaims against plaintiff for, in part, failure to pay rent. *Id.* at *1. Citing *Sparrow* and *Campos*, plaintiffs argued that the counterclaim should be dismissed because plaintiffs may be deterred from enforcing housing discrimination claims if they feared being sued for failure to pay rent. *Id.* at 7. In exercising supplemental jurisdiction, Judge Brazil distinguished *Sparrow* and *Campos* as involving large classes of plaintiffs and stated that:

> It is not at all clear that individual plaintiffs ... would be

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

- 13 -

better off having a separate action filed in state court or small claims court, rather than defending a counterclaim in an action they brought in a forum they chose. Plaintiffs provide little reasoned analysis as to why it would be better for Plaintiffs to be subject to a separate action in a different court.

*Id.* at *7.

In *Bakewell v. Federal Financial Group, Inc.*, 2006 U.S. Dist. Lexis 23073 (N.D. Ga. 2006), a case clearly on point, defendant counterclaimed against plaintiff, who had filed an FDCPA claim, to seek to recover money plaintiff owed on the underlying account. The court chose not to decline supplemental jurisdiction and held that the "underlying debt <u>does not</u> raise novel or complex issues of state law. Also, Defendant's claim is not so complex or huge that it will predominate over Plaintiff's FDCPA claim." *Id.* The court went on to hold that:

> [T]here are also public policy reasons for allowing both claims under one suit. First, it is inherently more efficient to deal with both matters in one consolidated action. Second, to bar Defendant's counterclaim would be to favor one litigant's claim over another, a practice courts should not engage in.

*Id.* at *13.

The same observations apply here. Absent the opportunity to prosecute its counterclaim here, Chase may be forced to satisfy the FDCPA claim in full, with no assurance that the debtor would have sufficient funds to satisfy a judgment in a separate state court action for the underlying debt. Were this Court to retain jurisdiction, Chase would at least have the opportunity to offset its debt claim against whatever Plaintiff may recover on his complaint.

This Court should adopt the reasoning in *Channell* and *Plant*, *supra*, to exercise supplemental jurisdiction. There are no compelling reasons not to because the Plaintiff here has essentially admitted that he incurred the underlying debts that are the subject of the counterclaim. It would therefore be wasteful and inefficient to force Chase to bring a separate action for the collection of the account balances.

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

1    The reasoning from the TILA (*Plant*), Consumer Leasing Act (CLA)

2    (*Channell*), and ECOA (*Jones*) cases is equally valid here.  TILA, the CLA, ECOA

3    and the federal FDCPA were all part of the contemporaneously enacted Consumer

4    Credit Act (15 U.S.C. § 1600 et seq.), which had as its goal the protection of

5    consumers in credit transactions.  The complaints in the TILA, CLA, and ECOA

6    cases likewise involve issues that go beyond the existence of the underlying debt

7    pled in the counterclaim, but that factor did not dissuade the *Plant* and *Channell*

8    courts from keeping the two claims in the same action.  Because circuit courts have

9    found no "chilling effect" of counterclaims in TILA and CLA cases, the same result

10   should apply here.  Thus, this Court should follow the reasoning in *Plant* and

11   *Channell* that declining to exercise jurisdiction over counterclaims seeking to

12   collect admittedly valid debts would discourage the payment of valid debts and

13   encourage more litigation under the Consumer Credit Act.  Declining jurisdiction

14   would also create inefficiency and wastefulness in adjudicating an admittedly valid

15   collection claim.

16       **4.**      **The Counterclaims will not "predominate" or have a chilling effect**

17       In *Koumarian v. Chase Bank USA, N.A.*, 2008 WL 5120053, 2008 U.S.

18   District LEXIS 101910 (N.D. Cal. 2008), cited by Plaintiff's MPA at 3:23, the

19   court rejected the *Sparrow* analysis in the context of a relatively small

20   counterclaim:

21           In the instant action, Koumarian argues that allowing a
        defendant to seek to collect the underlying debt in a

22           federal action to enforce the FDCPA "might well have a
        chilling effect on persons who otherwise might and

23           should bring suits such as this." *See Leatherwood*, 115
        F.R.D. at 50. In response, Chase argues that any "chilling

24           effect"  [*11] identified by Koumarian is outweighed by
        the interests of judicial economy, efficiency, and fairness,

25           all of which would be promoted by the exercise of
        supplemental jurisdiction. *See Gibbs*, 383 U.S. at 726

26           (noting justification for pre-§ 1367 doctrine of pendent
        jurisdiction "lies in considerations of judicial economy,

27           convenience and fairness to litigants; if these are not
        present a federal court should hesitate to exercise

28           jurisdiction over state claims").

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

Here, given the relatively small amount of the alleged debt, $ 3,086.23 plus interest from September 12, 2008 (*see* Counterclaim at 3), it appears unlikely that the Court's exercise of supplemental jurisdiction over Chase's Counterclaim against Koumarian would have a "chilling effect" on Koumarian's FDCPA claim or on potential analogous claims made by similarly situated individuals. Nor can Koumarian "expect a court to . . . use the fact that case-by-case enforcement is expensive . . . (perhaps too expensive to justify independent legal action) to bestow on [her] a legal right to avoid collection," if the debt at issue is in fact valid. *See Channell*, 89 F.3d at 386. Finally, as Chase points out, the exercise of supplemental jurisdiction  [*12] in the instant action will promote the goals of judicial economy and efficiency, as all claims related to the alleged debt incurred by Koumarian will be resolved in a single action. *See Gibbs*, 383 U.S. at 726.

**D.   The Chilling Effect Analysis Has Never Been Applied To State Common-Law Claims**

The second cause of action alleges common law invasion of privacy.  This claim is based on essentially the same facts as the RFDCPA claim.  The third cause of action alleges breach of contract.  The fourth cause of action alleges breach of the covenant of good faith and fair dealing.

No court has ever held that the chilling effect analysis applies to counterclaims asserted where the complaint is based on <u>state common claims</u>.  The "chilling effect" analysis, to the extent it has been accepted by some courts, has been strictly limited to FDCPA claims.  Under the reasoning in *Sparrow*, there is supplemental jurisdiction over the counterclaims as to causes of action 2-4, and there is no policy reason for not exercising it.  Indeed, the interests of economy, efficiency and fairness discussed above strongly favor exercising supplemental jurisdiction.

### III.  CONCLUSION

Chase requests that the Court deny Plaintiff's Motion in its entirety on two separate and independent grounds.  First, Chase's counterclaims are compulsory because they involve the same transactions and occurrences alleged in Plaintiff's

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

FAC, namely his unpaid credit card balances.  Second, this Court has supplemental

jurisdiction over all of Chase's claims because they involve the same case or

controversy as Plaintiffs' claims and there is no valid reason not to exercise such

jurisdiction.

Dated:  1/24/2011                        ROPERS, MAJESKI, KOHN & BENTLEY


By: /s/ ANDREW CHO
    GEORGE G. WEICKHARDT
    ANDREW J. CHO
    Attorneys for Defendants
    CHASE BANK USA, N.A. and
    JPMORGAN CHASE BANK, N.A.,
    erroneously sued herein as JP MORGAN
    CHASE BANK

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

RCI/5849478.1/AC1

- 17 -

CHASE BANK USA, N.A'S OPPOSITION TO
PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM

# EXHIBIT A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 10-0663 AG (RNBx) | Date | December 13, 2010 |
|---|---|---|---|
| Title | HAROLD HANEY v. LAW OFFFICES OF RORY W. CLARK, et al. | | |

| Present: The Honorable | ANDREW J. GUILFORD | |
|---|---|---|
| Lisa Bredahl | Not Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|

**Proceedings:** **[IN CHAMBERS] ORDER DENYING PLAINTIFF'S MOTION TO DISMISS AND GRANTING DEFENDANT'S MOTION TO CONTINUE THE TRIAL DATE**

This case concerns an alleged credit card debt that Plaintiff/Counter-Defendant Harold Haney ("Plaintiff") owes to Defendant/Counterclaimant Chase Bank USA, N.A. ("Defendant"). Plaintiff now brings a Motion to Dismiss Defendant's counterclaims for lack of subject matter jurisdiction under Rule 12(b)(1) ("Motion to Dismiss"). Defendant also brings a Motion to Continue the Trial Date from February 1, 2011 to late June 2011 ("Motion to Continue"). After considering all the papers and argument submitted, the Court DENIES Plaintiff's Motion to Dismiss and GRANTS Defendant's Motion to Continue.

## BACKGROUND

The following facts are taken from Defendant's First Amended Counterclaim ("Counterclaim") and, as it must for the Motion to Dismiss, the Court assumes them to be true.

Defendant is a national banking association. (Counterclaim ¶ 2.) Plaintiff applied for and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 10-0663 AG (RNBx) | Date | December 13, 2010 |
|---|---|---|---|
| Title | HAROLD HANEY v. LAW OFFFICES OF RORY W. CLARK, et al. | | |

received two credit card accounts from Defendant. (Counterclaim ¶¶ 4, 10.) Under the credit card agreements ("Agreements"), Plaintiff agreed (1) to pay Defendant for all purchases, balance transfers and cash advances, and (2) to pay collection costs, including attorney's fees, court costs and all other expenses, in the event Plaintiff defaulted. (Counterclaim ¶¶ 4-5, 10-11.) Plaintiff later failed or refused to make all of the payments required under the Agreements. (Counterclaim ¶¶ 6, 12.) The current unpaid balance under the Agreements is $44,249.89 plus twenty-four percent interest. (Counterclaim at 3:27-28.)

Plaintiff filed a complaint against Defendant for violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692g. (*See* Plaintiff's Complaint ("Compl.").) Defendant later filed a Counterclaim, which alleged counterclaims for breach of contract and "money had and received" relating to Plaintiff's failure to pay under the Agreements. (Docket # 23.) Plaintiff subsequently voluntarily dismissed his claims without prejudice. (*See* Docket # 30.) Plaintiff now seeks to dismiss Defendant's Counterclaim for lack of subject matter jurisdiction.

**PRELIMINARY MATTERS**

**1.     LOCAL RULE 7-3**

Defendant argues that Plaintiff's Motion to Dismiss is barred for failure to comply with Local Rule 7-3. (Defendant's Opposition ("Dismiss Opp'n") at 3:16-24.)

The Central District's Local Rule 7-3 requires that "counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution." L.R. 7-3. For a motion to dismiss, the parties are supposed to meet and confer at least five days prior to the last day for filing the motion. *Id.* If the parties are unable to come to a resolution, the rule requires the moving party to include a statement in the motion stating

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 10-0663 AG (RNBx) | Date | December 13, 2010 |
|---|---|---|---|
| Title | HAROLD HANEY v. LAW OFFFICES OF RORY W. CLARK, et al. | | |

that the parties attempted to confer in compliance with Local Rule 7-3. Though the Court takes issues of compliance with procedural rules seriously, the Court still has discretion in applying the Local Rules. *See, e.g., Lance, Inc. v. Dewco Services, Inc.*, 422 F.3d 778, 784 (9th Cir. 1970).

Defendant argues that Plaintiff failed to meet and confer with Defendant at least ten days before filing the Motion to Dismiss. (Dismiss Opp'n. at 3:26-28.) Defendant also argues that Plaintiff failed to include the required statement in his motion confirming that the parties met and conferred before Plaintiff filed the motion. (*Id.* at 3:16-19.)

Local Rule 7-3 only requires the parties to meet and confer five days, not ten days as Defendant alleges, before filing a motion to dismiss. *See* L.R. 7-3. Despite Plaintiff's failure to meet and confer five days before filing the Motion to Dismiss and failure to include a statement in the Motion to Dismiss, the Court finds that Plaintiff, who is a *pro se* litigant, sufficiently followed the spirit of Local Rule 7-3. Here, Defendant does not contest that Plaintiff emailed his motion to Defendant one day before filing the Motion to Dismiss. (*Id.* at 3:21-23.) Plaintiff also discussed the substance of his Motion to Dismiss a few days later via email. (*See* Plaintiff's Reply ("Dismiss Reply"), Ex. A.)

Therefore, Plaintiff has sufficiently complied with Local Rule 7-3. Accordingly, the Court will consider Plaintiff's Motion to Dismiss on the merits.

## 2.    DEFENDANT'S REQUEST TO VACATE THE HEARING

Defendant requests that "the Court rule on the papers and not hold oral argument for this Motion [to Dismiss]." (Dismiss Opp'n at 8:20-21.) Defendant does not provide specific reasons for why a hearing is not necessary. The Court does not find good cause for granting this request. Therefore, the Court DENIES Defendant's request to vacate the hearing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV 10-0663 AG (RNBx) | Date | December 13, 2010 |
|---|---|---|---|
| Title | HAROLD HANEY v. LAW OFFFICES OF RORY W. CLARK, et al. | | |

## ANALYSIS

### 1.    PLAINTIFF'S MOTION TO DISMISS

Plaintiff argues that the Court lacks subject matter jurisdiction over Defendant's counterclaims. (Motion to Dismiss at 4:12-13.) Because Plaintiff filed his motion to dismiss under Rule 12(b)(1), the Court presumes that Defendant's Counterclaim "lies outside [the Court's] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Vacek v. United States Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted)).

Because Defendant argues that its four counterclaims are properly before this Court, Defendant has the burden of proving subject matter jurisdiction. (*See* Dismiss Opp'n at 8:13-19.) Defendant's burden depends on whether his counterclaims arise from the "same case or controversy" as Plaintiff's claims. Under supplemental jurisdictional, a party does not need to assert an independent basis for jurisdiction as long as his or her claim arise from the "same case or controversy" as the claims that are supported by original jurisdiction. 28 U.S.C. § 1367(a). Even if the claims supported by original jurisdiction are dismissed, the Court still has discretion to hear the remaining claims supported by supplemental jurisdiction. *Carlsbad Technology, Inc. v. Hif Bio, Inc.*, 129 S.Ct. 1862, 1866 (2009) ("A district court's decision whether the exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary.").

Plaintiff indirectly argues that Defendant's counterclaims do not arise from the "same case or controversy" as his claims because they address completely different issues. (*See id.* at 6:13-24.) Plaintiff asserts that his claims strictly involve Defendant's wrongful actions in failing to validate Plaintiff's debt and in attempting to collect the debt. (*Id.*) Plaintiff contends that Defendant's claims relate to the validity of the underlying debt, which has nothing to do with Defendant's conduct. (*Id.*)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 10-0663 AG (RNBx) | Date | December 13, 2010 |
| --- | --- | --- | --- |
| Title | HAROLD HANEY v. LAW OFFFICES OF RORY W. CLARK, et al. | | |

But Plaintiff is construing the "same case or controversy" standard too narrowly. *See* 28 U.S.C. § 1367(a). The claims do not need to be identical. Rather, the claims must derive from a common nucleus of operative fact. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966).

Here, the claims and counterclaims rose from the same set of facts. To succeed on his claims in the Complaint, Plaintiff needed show that he did not owe the $44,249.89 to prove that Defendant improperly tried to collect and failed to validate the debt. Likewise, to succeed on its claims in the Counterclaim, Defendant must show that Plaintiff owes the $44,249.89 to prove a breach of the underlying Agreements. Because both sets of claims rely on the underlying debt, the claims arise out of the same case or controversy. Thus, Defendant's claims are supported by supplemental jurisdiction. The Court will exercise its discretion and hear Defendant's counterclaims despite Plaintiff's voluntary dismissal. Therefore, Defendant has satisfied its jurisdictional burden. Accordingly, the Court does not address Plaintiff's arguments relating to independent bases for jurisdiction.

Plaintiff's Motion to Dismiss Defendant's Counterclaim is DENIED.

## 2. DEFENDANT'S MOTION TO CONTINUE THE TRIAL DATE

Defendant initially requested that the trial be continued from February 1, 2011 to late May or June 2011. (Motion to Continue at 2:16-18.) Defendant later clarified that it prefers to move the trial to late June 2011. (Defendant's Continuance Reply ("Continuance Reply") at 2:17-18.) Plaintiff never filed an opposition. As a result, the Court may consider Plaintiff as consenting to the granting of the motion. L.R. 7-12 ("The failure to file any required paper, or the failure to filed it within the deadline, may be deemed consent to the granting or denial of the motion.") But in the interests of fairness and judicial efficiency, the Court addresses the merits of Defendant's Motion to Continue.

Granting Defendant's request requires modification of the Court's scheduling order. "A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **SACV 10-0663 AG (RNBx)** | Date | December 13, 2010 |
|---|---|---|---|
| Title | HAROLD HANEY v. LAW OFFFICES OF RORY W. CLARK, et al. | | |

schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. Pro. 16(b)(4). "[T]he focus of the inquiry is upon the moving party's reasons for seeking modification . . . . If that party was not diligent, the inquiry should end." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) (citation omitted).

Here, good cause exists to modify the scheduling order. Defendant seeks to recover on its counterclaims, which were filed on July 20, 2010. (*See* Counterclaim at 1:27-3:24.) But Defendant contends that Plaintiff refuses to submit to a deposition, or to produce responses and documents relating to discovery requests. (Motion to Continue at 2:4-11.) In response, Defendant has submitted a motion and ex parte application to Magistrate Judge Robert Block, which seeks to compel Plaintiff's deposition, response to interrogatories, and document production. (Docket # 40, 56.) The Magistrate Judge has granted Defendant's ex parte motion and ordered Plaintiff to submit to a deposition, which is currently scheduled for December 20, 2010. (*See* Docket # 57.)

If the Court does not grant Defendant's Motion to Continue, the trial will be premature since it is unlikely that Defendant can complete discovery and fully prepare for trial before the February 1, 2011 deadline.

Therefore, the Court is persuaded by Defendant's arguments and finds that good cause exists to modify the scheduling order. Accordingly, (1) the discovery cutoff date is CONTINUED from November 1, 2010 to March 28, 2011, (2) the pretrial conference is CONTINUED from January 17, 2011 to June 13, 2011 at 8:30 a.m., and (3) the trial is continued from February 1, 2011 to June 28, 2011 at 9:00 a.m.

**DISPOSITION**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 10-0663 AG (RNBx) | Date | December 13, 2010 |
|---|---|---|---|
| Title | HAROLD HANEY v. LAW OFFFICES OF RORY W. CLARK, et al. | | |

The Court DENIES Plaintiff's Motion to Dismiss.

The Court GRANTS Defendant's Motion to Continue the Trial Date.

_____ : ___0___

Initials of
Preparer          lmb

GEORGE G. WEICKHARDT (SBN 58586)
ANDREW J. CHO (SBN 240957)
ROPERS, MAJESKI, KOHN & BENTLEY
201 Spear Street, Suite 1000
San Francisco, CA 94105-1667
Telephone:  (415) 543-4800
Facsimile:  (415) 972-6301
Email:    gweickhardt@rmkb.com
acho@rmkb.com

Attorneys for Defendant
CHASE BANK, USA, N.A.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

KENNETH A. MARCHAND,

Plaintiff,

v.

CHASE BANK USA, N.A.,

Defendant.

CASE NO. 2:10-cv-09805

PROOF OF SERVICE

RC1/5719817.3/CC11

PROOF OF SERVICE

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

| | |
|---|---|
| **CASE NAME:** | **Marchand v. Chase Bank, USA N.A.** |
| **ACTION NO.:** | **CV10-9805 DDP (JCx)** |

## PROOF OF SERVICE

**METHOD OF SERVICE**

☐ First Class Mail     ☐ Facsimile     ☐ Messenger Service

☐ Overnight Delivery     ☐ E-Mail/Electronic Delivery     ☒ ECF

1. At the time of service I was over 18 years of age and not a party to this action.

2. My business address is 201 Spear Street, Suite 1000, San Francisco, CA 94105-1667, County of San Francisco.

3. On January 24, 2011 I served the following documents:

   **CHASE BANK USA N.A.'SOPPOSITION TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM**

4. I served the documents on the persons at the address below (along with their fax numbers and/or email addresses if service was by fax or email):

   Jeremy S. Golden
   Golden & Cardona-Loya, LLP
   3130 Bonita Road
   Suite 200B
   Chula Vista, CA 91910
   619-476-0030

5. I served the documents by the following means:

   a. ☐ By United States mail: I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses specified in item 4 and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid at the address listed in Paragraph 2 above.

   b. ☐ By overnight delivery: I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses in item 4. I placed the envelope or package for collection and

Ropers Majeski Kohn & Bentley
A Professional Corporation
San Francisco

overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

c. ☐ By messenger: I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed in item 4 and providing them to a messenger for service. (Separate declaration of personal service to be provided by the messenger.)

d. ☐ By fax transmission: Based on an agreement between the parties and in conformance with Rule 2.306, and/or as a courtesy, I faxed the documents to the persons at the fax numbers listed in item 4. No error was reported by the fax machine that I used. A copy of the record of the fax transmission is attached.

e. ☐ By email or electronic transmission: Based on an agreement between the parties and/or as a courtesy, I sent the documents to the persons at the email addresses listed in item 4. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

f. ☒ Pursuant to Central District ECF

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: January 24, 2011

Carpus Chang
Type Name                                        Signature